2003 UT App 411

**PRIDE STABLES, a Utah limited partnership, Plaintiff and Appellant,**

v.

**HOMESTEAD GOLF CLUB, INC.; Frank Shannon; Gerald R. Sanders; et al., Defendants and Appellees.**

No. 20020796–CA.

Court of Appeals of Utah.

Nov. 28, 2003.

Jesse C. Trentadue and Michael W. Homer, Suitter Axland, Salt Lake City, for Appellant.

Richard D. Burbidge and Stephen B. Mitchell, Salt Lake City, for Appellees.

Before JACKSON, P.J., ORME and THORNE, Jr., JJ.

## OPINION

THORNE, Jr., Judge:

¶ 1 Pride Stables (Pride), a Utah limited partnership, appeals the denial of a motion to amend its pleadings and a grant of summary judgment to Homestead Golf Club, Inc., Gerald R. Sanders, and Great Inns of the Rockies, Inc. (collectively, Homestead), based on the trial court's determination that Pride's claims were barred by res judicata.[1] We affirm.

## BACKGROUND

¶ 2 In 1987, Pride, which was the partial owner of land located in Midway, Utah, filed bankruptcy and sought to reorganize under Chapter 11 of the United States Bankruptcy Code. After the bankruptcy was filed, Homestead approached Pride and asked for a lease to construct a golf course on Pride's property in exchange for lending Pride $185,000. Before the parties signed any lease agreement, Pride authored a "letter of commitment," allegedly in exchange for a $5000 advance on the loan. This letter of commitment allowed Homestead to obtain permission from Midway to begin construction of the golf course on a portion of Pride's property. However, the letter of commitment made clear that the parties had yet to reach a final agreement regarding the construction of the golf course. The letter provided:

> The underlying agreements between the parties necessary to make such a commitment have been reached in principle and are awaiting final documentation, which is expected to be prepared and signed within the next two weeks. As such, we have no objection to the granting of a construction

1. Valley Bank and Trust Company was granted summary judgment and summarily dismissed prior to trial along with several other originally-named defendants.

permit to the Homestead Golf Club, Inc. for the purpose of beginning construction on the proposed golf course in Midway, Utah.

¶ 3 Subsequently, Pride and Homestead were unable to agree on the lease terms, because Homestead wanted Pride's other creditors to subordinate their liens on the lease property. Pride was unable to obtain these subordinations.

¶ 4 In 1989, Pride sued Homestead in district court, alleging that Homestead breached its contractual obligation to loan Pride $185,000, that Homestead had tortiously interfered with Pride's business relationship, had breached a covenant of good faith and fair dealing, and had committed fraud. Subsequently, creditors foreclosed a portion of Pride's property, which Homestead purchased at the foreclosure sale. Pride retained title to a piece of property that had not been subject to foreclosure and on which Homestead planned to construct the 14th hole of the golf course (14th hole property).

¶ 5 To preserve a claimed interest in the 14th hole property, Homestead filed an "adversary proceeding" in the bankruptcy court, alleging that Pride had granted Homestead a license to use the property. In response, Pride attempted to litigate issues relating not only to the 14th hole property but also relating to the property Homestead had purchased at the foreclosure sale. The bankruptcy court limited its review to the 14th hole property, deciding that it did not have jurisdiction over the property sold at foreclosure because that property was no longer part of the bankruptcy estate.

¶ 6 Several appeals occurred in the federal bankruptcy case until, finally, the matter was decided by the Tenth Circuit Court of Appeals in *Homestead Golf Club, Inc. v. Pride Stables*, 224 F.3d 1195 (10th Cir.2000). There, the court concluded that Pride and Homestead had not entered into a valid oral lease agreement, *see id.* at 1200, because the court was "unable to determine the rights of the respective parties under the agreement." *Id.* at 1201. The court also rejected Pride's claim for equitable estoppel. *See id.* at 1202.

The court further noted in a footnote that Pride had raised the defenses of detrimental reliance and part performance, but concluded that it would not address issues raised for the first time in a reply brief. *See id.* at 1202 n. 10.

¶ 7 In November 2001, over fourteen months after the Tenth Circuit ruling, Pride filed a motion to amend its complaint in the state court action. Homestead objected and argued that Pride should not be allowed to amend its complaint because it had been twelve years since Pride first filed suit and the Homestead officer who allegedly committed most of the wrongful acts had died. Furthermore, after several of the named defendants were each granted summary judgment and dismissed from the action, Pride failed to take any action in the case for ten years. Homestead also argued that the claims Pride wanted to add to its amended complaint were barred by res judicata, as they had been, or should have been, litigated in the bankruptcy proceeding.[2]

¶ 8 The district court denied Pride's motion to amend because it was untimely. The court stated,

> the untimeliness unduly prejudices the opposing party. All parties agree that the discovery was completed in the early years of this lawsuit. Since the time of the filing and completion of discovery, the person alleged to have been the principal wrongdoer, L.L. Stroud, has died. Even though he testified in earlier proceedings and was deposed, plaintiff has alleged new causes of action which cannot now be explored. Additionally, while the federal court action may have caused some delay in these proceedings, the federal lawsuit was completed September 12, 2000. Plaintiff makes no explanation for the fourteen month delay before it filed its motion in this lawsuit.

The court also found that the bankruptcy court's rulings barred the complaint. The court stated,

> the [Tenth Circuit] ruled that no agreement existed between [Pride] and [Homestead], that there had never been a meet-

---

**2.** The court granted Homestead's request to take judicial notice of the bankruptcy proceedings, including the appeal to the Tenth Circuit Court of Appeals.

ing of the minds on the terms of the agreement, and at best their discussions had only been an agreement to agree. All of the plaintiff's proposed amended causes of action are based upon the same factual basis upon which the Tenth Circuit rendered its opinion.

¶ 9 Subsequently, Homestead filed a motion for summary judgment, arguing that all the claims in the existing complaint were also barred by res judicata. Pride filed a cross-motion for partial summary judgment, arguing that Homestead could not deny that it had promised to loan Pride $185,000 because Homestead had stipulated to this fact in a pretrial order. The court granted Homestead's motion on the ground that Pride's claims were barred by res judicata. The trial court stated:

> The res judicata effect of the 10th Circuit Court's decision bars [Pride]'s causes of action. It is undisputed that this lawsuit is based upon only one set of operative facts and one transaction. [Pride]'s ... cause of action for breach of contract and ... cause of action for breach of implied covenant of good faith and fair dealing, which depends on an enforceable contract, are based upon the same agreement that the 10th Circuit Court ruled was never completed by the parties. Therefore, it is clear that the 10th Circuit ruling that there was no agreement between the parties bars these causes of actions. Although plaintiff argues that its cause of action included claims based upon part performance and promissory estoppel, [Pride] has not pled them.

> As to ... fraud, .... [w]hile an enforceable contract is not required for an action in fraud, [Pride]'s fraud claim is based upon [Homestead]s' failure to perform under the alleged agreement which was addressed by the 10th Circuit opinion.... It appears clear that one cannot base a fraud

claim on a failure to perform an agreement where the court has found no agreement exists.... [T]he plaintiff is barred by the res judicata effect of the 10th Circuit opinion as to its fraud claim, as well.

¶ 10 Pride appeals.

## ISSUES AND STANDARDS OF REVIEW

██ ¶ 11 Pride claims that the trial court erred in denying the motion to amend its pleadings after concluding that all the amendments were barred by res judicata. "Whether to grant or deny a motion to amend is 'a matter within the broad discretion of the trial court and we [will not] disturb its ruling unless [the appealing party] establishes an abuse of discretion resulting in prejudice.' " *Nunez v. Albo,* 2002 UT App 247, ¶ 10, 53 P.3d 2 (first alternation original) (quoting *Chadwick v. Nielsen,* 763 P.2d 817, 820 (Utah Ct.App.1988), *cert. denied,* 59 P.3d 603 (Utah 2002)).

██ ¶ 12 Pride also argues that the trial court erred in granting Homestead's motion for summary judgment. " 'The propriety of a trial court's grant of summary judgment is a question of law.' " *Snyder v. Murray City Corp.,* 2003 UT 13, ¶ 16, 73 P.3d 325 (quoting *WebBank v. Am. Gen. Annuity Serv. Corp.,* 2002 UT 88, ¶ 10, 54 P.3d 1139). " 'In deciding whether summary judgment was appropriate, we need review only whether the trial court erred in applying the relevant law and whether a material fact was in dispute.' " *Id.* (quoting *WebBank,* 2002 UT 88 at ¶ 10, 54 P.3d 1139). " 'We thus review the trial court's legal conclusions for correctness, according them no deference.' " *Id.* (citation omitted) [3]

## ANALYSIS

¶ 13 Pride's arguments on appeal are interrelated. The trial court denied Pride's

**3.** Pride also argues that the trial court erred in denying its cross-motion for partial summary judgment. In that motion, Pride argued that Homestead could not deny that it had promised to loan Pride $185,000 because Homestead had stipulated to this fact in a pretrial order. Because we conclude that Homestead was entitled to summary judgment, thereby rendering Pride's motion moot, we do not address this argument.

Pride also argues Homestead was judicially estopped from denying it promised to loan Pride $185,000 because it had stipulated in a pretrial order it had "orally agreed that [it] would lend [Pride] the sum of $185,000 so that [Pride] could make payment to certain of its creditors." We need not address this argument because, even if Homestead admitted it had made a promise to Pride, this would not overcome the res judicata effect of the Tenth Circuit's ruling.

motion to amend because the motion was untimely and because the claims in the proposed amendment were barred by res judicata. Likewise, the court granted Homestead's motion for summary judgment because it concluded that the action was barred by res judicata. Accordingly, we address these arguments in concert.

¶ 14 " 'Res judicata encompasses two distinct doctrines: claim preclusion and issue preclusion.' " *Snyder v. Murray City Corp.*, 2003 UT 13, ¶ 33, 73 P.3d 325 (quoting *Miller v. USAA Cas. Ins. Co.*, 2002 UT 6, ¶ 57, 44 P.3d 663) (other citations omitted).[4] The district court did not specify upon which branch of res judicata it relied, but we conclude that claim preclusion is the most applicable here.

¶ 15 " 'Generally, "claim preclusion bars a party from prosecuting in a subsequent action a claim that has been fully litigated previously." ' " *Id.* at ¶ 34 (citations omitted).

" 'In order for a claim to be precluded under this doctrine the party seeking preclusion must establish three elements: 'First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit *or be one that could and should have been raised in the first action.* Third, the first suit must have resulted in a final judgment on the merits' ' "

*Id.* (emphasis added) (citations omitted).

¶ 16 Pride's attempt to distinguish between the two parcels of property in an attempt to prevent res judicata from applying in this case is not persuasive. We recognize that the bankruptcy proceeding related only to the 14th hole property. However, the alleged agreement at issue in the bankruptcy case is the same alleged agreement that Pride seeks to enforce here. Accordingly, any finding regarding that agreement is binding upon us if the elements of claim preclusion are met.[5]

¶ 17 Here, Homestead argues that each of the elements of claim preclusion have been met. First, Homestead notes that both the bankruptcy proceeding and this action involve Pride and Homestead. *See Snyder*, 2003 UT 13 at ¶ 34, 73 P.3d 325. Homestead further argues that Pride's claims, both in its original complaint and in the subsequent amendment, are barred by claim preclusion because each claim could have been or should have been raised in the bankruptcy proceeding. Finally, Homestead asserts that the bankruptcy proceeding resulted in a final judgment on the merits. *See id.*

¶ 18 Upon review, we conclude that the parties fully litigated in the bankruptcy proceeding the issue of whether an express contract existed between Pride and Homestead. We also conclude that the Tenth Circuit expressly rejected Pride's argument that the agreement between the parties was enforceable by equitable estoppel. *See Homestead Golf Club, Inc. v. Pride Stables*, 224 F.3d 1195, 1201–02 (10th Cir.2000). Most importantly, we conclude Pride could have raised in the bankruptcy proceedings the very issues of part performance, promissory estoppel, and fraud that it now seeks to raise.[6] Accordingly, the elements of claim preclusion have been met and res judicata prohibits Pride from relitigating these issues here.

¶ 19 Turning to this appeal, Pride first argues that the trial court should have

---

4. Because we conclude that this case involves claim preclusion, we do not address issue preclusion.

5. The more persuasive set of facts and argument would have been that each parcel of property was subject to a separate agreement. If separate agreements had been proven, then the Tenth Circuit decision regarding the loan agreement secured by the 14th hole property would have no bearing on the alleged agreement secured by the remaining property. Pride does not argue on appeal that two agreements existed nor does any evidence in the record support the claim that

Pride and Homestead negotiated more than one agreement.

6. Pride attempted to raise the arguments of part performance and promissory estoppel in the bankruptcy proceeding. However, the Tenth Circuit refused to address these arguments because Pride failed to raise them until its reply brief. This has no impact on our res judicata analysis. The issue is not whether the arguments were raised, but whether they should or could have been properly raised by the parties in the earlier proceeding.

granted its motion to amend its complaint. We disagree. The trial court found that Homestead would be prejudiced if Pride were allowed to amend its complaint because it had been over ten years since discovery was completed and one of the key witnesses had died since discovery was closed. Furthermore, the court properly concluded that the claims Pride wanted to raise in its amendment were barred by res judicata. Under these circumstances, the trial court did not exceed its permitted range of discretion in denying Pride's motion to amend its pleadings. *See Nunez v. Albo,* 2002 UT App 247,¶ 10, 53 P.3d 2 (*cert. denied,* 59 P.3d 603 (Utah 2002)).

¶ 20 Likewise, the trial court did not err in granting Homestead's motion for summary judgment. The trial court properly concluded that each of Pride's claims was barred by res judicata. *See Snyder v. Murray City Corp.,* 2003 UT 13,¶ 34, 73 P.3d 325.

## CONCLUSION

¶ 21 The district court did not exceed its permitted range of discretion in denying Pride's motion to amend its pleadings, for the motion was untimely and all claims contained in such amendment were barred by res judicata. Similarly, the trial court granted Homestead its motion for summary judgment, for all claims raised by Pride were barred by res judicata.

¶ 22 I CONCUR: NORMAN H. JACKSON, Presiding Judge.

¶ 23 I CONCUR IN THE RESULT: GREGORY K. ORME, Judge.