2009 UT App 240

RED CLIFFS CORNER, LLC, Plaintiff, Appellee, and Cross-appellant,

v.

J.J. HUNAN, INC. dba J.J. Hunan Sum Fun Food; and R. Alan Knox, Defendants, Appellants, and Cross-appellees.

No. 20070846–CA.

Court of Appeals of Utah.

Sept. 3, 2009.

Russell S. Walker and David R. Williams, Salt Lake City, for Appellants and Cross-appellees.

Russell S. Mitchell, St. George, for Appellee and Cross-appellant.

Before GREENWOOD, P.J., THORNE, Associate P.J., and McHUGH, J.

## OPINION

THORNE, Associate Presiding Judge:

¶ 1 Defendants J.J. Hunan, Inc. (Hunan) and R. Alan Knox appeal from the trial court's judgment in favor of Plaintiff Red Cliffs Corner, LLC (RCC). Specifically, Hunan appeals the trial court's interpretation of a lease and determination that RCC was entitled to terminate the lease and that Hunan had waived its claim for breach of lease. Hunan also appeals the trial court's denial of Hunan's motion to amend its counterclaim as well as the early release of RCC's possession bond. RCC cross-appeals the trial court's denial of RCC's request for attorney fees. We affirm in part and reverse and remand in part.

## BACKGROUND

¶ 2 RCC is the landlord of a building within the Zion Factory Stores Shopping Center in St. George, Utah. Hunan is a Utah corporation that owns and operates restaurants. RCC, through its leasing director, Rene Daniels, initiated lease negotiations with Hunan, through its agent R. Alan Knox. In November 2003, Hunan and RCC agreed to the final lease terms and conditions and executed the lease. In connection with the lease, at RCC's insistence, Knox signed a personal guaranty of Hunan's lease obligations.

¶ 3 The lease set forth the work that RCC and Hunan each agreed to perform within the premises, at their individual costs, as well as completion deadlines. The lease required that Hunan deliver to RCC for its review and approval, within thirty days of signing the lease, two sets of plans for the improvements Hunan intended to make on the premises. The lease specified that the lease term would commence thirty days after RCC completed its required work and tendered possession of the premises to Hunan.

¶ 4 On June 22, 2004, RCC sent Hunan a notice of tender informing Hunan that the premises would be ready for occupancy by July 1, 2004. According to the terms of the lease, Hunan had thirty days after the notice of tender to present RCC with a punch list of items for RCC to correct. The lease further provided that "Tenant's taking physical possession of the Premises shall be conclusive evidence that Tenant accepts the same and that the Premises are in the condition called for by this Lease."

¶ 5 On September 6, 2004, Hunan took possession of the premises and began working on the obligatory improvements. On September 29, representatives from Hunan and RCC met to discuss concerns Hunan had regarding the premises, among them some holes in the drywall, a leak from the roof, the need for an exhaust fan area located in the roof, the fact that the HVAC system was only a seven-ton as opposed to a ten-ton system, as well as rent commencement date issues. After the meeting, the parties exchanged ongoing correspondence wherein they continued to confer about issues related to the premises. Thereafter, the parties signed an agreement wherein RCC and Hunan agreed to the following:

1. The Commencement Date under the Lease regarding when rent shall commence shall be modified from October 1st, 2004, to November 1st, 2004.

2. Tenant agrees that the only remaining Landlord's Work is as follows:

    a. Modify HVAC units to provide 10 ton HVAC;

    b. Charge the HVAC and fill with Freon once Tenant has power hooked up;

    c. Repair small roof leak coming from duct work; and

    d. Obtain acceptable response from Watts Construction regarding a cut through the top plate.

3. Tenant agrees that, other than the items in paragraph 2 above, all of the Landlord's Work is completed, and Tenant accepts the Premises as is and waives any and all claims for further Landlord's Work under the lease.

¶ 6 Hunan did not pay rent on November 1 and made each monthly rent payment from November 2004 through February 2005 late. In a letter dated February 28, 2005, RCC gave Hunan notice of cancellation of the lease, pursuant to paragraph 29 of the lease, informing Hunan that RCC "has exercised its option to terminate the Lease, and this is your three-day written notice of cancellation."

¶ 7 On March 4, 2005, RCC served Hunan with a notice informing Hunan that

> [Y]our tenancy at will ... is hereby terminated at the expiration of five (5) days from the date this notice is served. This notice is given pursuant to Utah Code [section] 78–36–3(1)(b)(ii). If you remain in possession of the premises after the date of termination, you will be guilty of an unlawful detainer, and legal action will be initiated against you for restitution of the premises and for three times the damages assessed against you in accordance with Utah Code [section] 78–36–10 ....

Hunan did not vacate the premises within five days, and RCC filed a complaint for eviction and enforcement of the guaranty against Hunan and Knox. Thereafter, Hunan filed an answer and counterclaim asserting a breach of lease agreement claim against RCC.

¶ 8 On April 18, RCC obtained an order from the trial court setting a possession bond for the premises at $5000. RCC filed a cash possession bond and served a notice on Hunan. About a month later, RCC filed a motion and memorandum seeking an order releasing its possession bond. The trial court granted the request and entered an order releasing RCC's possession bond. Hunan filed a motion for relief from the order requesting that the trial court set aside the order because the order was entered before the response deadline. The trial court held a hearing and denied Hunan's motion for relief.

¶ 9 On August 1, Hunan filed a motion to amend its counterclaim. Almost six months later, Hunan filed a request with the court to submit for decision its motion to amend. The trial court held a hearing on that motion in March 2006 and thereafter entered an

order denying Hunan's motion to amend the counterclaim, concluding that

1. [Hunan] failed to set forth with any particularity the grounds for [its] Motion to Amend to be granted.... [Hunan] did not file a separate memorandum outlining any case law to support [its] conclusion that [its] Motion to Amend should be granted.

2. Furthermore, although a Memorandum in Opposition to [its] Motion was timely filed, [Hunan] did not file any reply memorandum contradicting the case law brought out by [RCC] that the failure to set forth particular grounds for relief is fatal to [Hunan's] Motion.... [Hunan is] silent in any court filings showing any discovery being done that would be consistent with the amended claims [it] sought, nor did [it] amend [its] initial disclosures to address the claims [it] was seeking to add or how the calculation of damages might be set forth. Rather, [Hunan] took no action for approximately six months and at a time well after the Court had already had its final pretrial conference to set a trial date. For all intents and purposes, it appears that [Hunan] decided not to pursue the Amended Counterclaim and acted according to that apparent decision.

. . . .

5. Although [Hunan's] counsel, at the time of the hearing attempted to specify several specific "facts" to support [Hunan's] Motion to Amend, these statements lack foundation, as they were not supported by any affidavit or credible document, and the Court will not consider such statements....

6. The claims asserted in [Hunan's] proposed Amended Counterclaim are not based on newly discovered facts brought out through the discovery process, as [Hunan has] not conducted any discovery at any time in this case....

7. Because [Hunan] waited for nearly six months to file [its] Request to Submit for Decision, [it has] waived any right to have [its] Motion considered timely filed, and [its] Motion must be treated as though it was more recently filed. Therefore, [Hunan] seek[s] to amend [its] Counterclaim at a time when discovery has concluded several months ago and a pretrial conference was already held six weeks prior to filing the Request and is now before the Court at a time just six weeks prior to trial.

¶ 10 After a bench trial, the trial court issued its findings, ruling in favor of RCC and concluding that (1) Hunan had waived its claim against RCC for breach of lease; (2) RCC was entitled to terminate the lease because Hunan was late with its rent payments for three consecutive months; (3) Hunan was in unlawful detainer of the premises, and RCC was entitled to treble damages; and (4) each party should bear its own attorney fees and costs. RCC filed a rule 52 motion to amend findings of fact and conclusions of law, requesting its attorney fees and costs. The trial court denied RCC's request.

## ISSUES AND STANDARDS OF REVIEW

¶ 11 Before we consider the several issues on appeal, we must first determine whether this court has jurisdiction to hear this appeal. Initially, this court considered the case sua sponte for summary disposition on the basis of lack of jurisdiction due to untimely filed notices of appeal and cross-appeal, directing both parties to file a memorandum addressing jurisdiction. Thereafter, this court withdrew the sua sponte motion for summary disposition, and deferred a ruling on the jurisdictional issue pending plenary presentation and consideration of the case. Thus, we first consider the matter to ascertain the timeliness of the notice of appeal in this case. *See Serrato v. Utah Transit Auth.*, 2000 UT App 299, ¶ 7, 13 P.3d 616 ("If an appeal is not timely filed, this court lacks jurisdiction to hear the appeal.").

■ ¶ 12 On appeal, Hunan asserts that the trial court incorrectly interpreted the lease when it held that RCC was entitled to terminate the lease. "We review issues of contract interpretation not requiring a resort to extrinsic evidence for correctness, affording no deference to the trial court." *Miller Family Real Estate, LLC v. Hajizadeh*, 2008 UT App 475, ¶ 4, 200 P.3d 213.

■ ¶ 13 Hunan also asserts that the trial court erred in interpreting and applying two

sections of the unlawful detainer statute. In particular, Hunan argues that the trial court erred by releasing RCC's possession bond, *see generally* Utah Code Ann. § 78–36–8.5 (2002),[1] before ruling on the unlawful detainer issue and also erred in concluding that Hunan was in unlawful detainer of the premises. "The trial court's interpretation of a statute is a question of law which we review for correctness." *Cache County v. Beus,* 1999 UT App 134, ¶ 8, 978 P.2d 1043.

¶ 14 Hunan next argues that the trial court erred in holding that Hunan had untimely filed a motion to submit on Hunan's motion to amend its counterclaim and thereafter denying Hunan's motion to amend based on the untimely request. "We will not overturn a trial court's denial of a motion to amend a pleading absent an abuse of discretion." *Otsuka Elecs. v. Imaging Specialists, Inc.,* 937 P.2d 1274, 1277 (Utah Ct.App.1997).

¶ 15 Lastly, Hunan argues that the trial court abused its discretion in holding that Hunan waived its claim for breach of lease against RCC. Hunan asserts that it did not intend to relinquish its breach of lease claim and that RCC should not have been allowed to invoke the equitable defense of waiver when RCC had unclean hands from breaching the lease.

> Whether a party has effectuated a waiver is a mixed question of law and fact. [W]hether the trial court employed the proper standard of waiver presents a legal question which is reviewed for correctness, but the actions or events allegedly supporting waiver are factual in nature and should be reviewed as factual determinations. Thus, we grant broadened discretion to the trial court's findings when reviewing questions of waiver.

*Kenny v. Rich,* 2008 UT App 209, ¶ 18, 186 P.3d 989 (alteration in original) (citations and internal quotation marks omitted).

¶ 16 On cross-appeal, RCC argues that the trial court erred by failing to award RCC attorney fees. "Whether attorney fees are recoverable in an action is a question of law, which we review for correctness." *Ellison v. Stam,* 2006 UT App 150, ¶ 18, 136 P.3d 1242 (internal quotation marks omitted).

## ANALYSIS

### I. Jurisdiction on Appeal

¶ 17 Utah Code section 78B–6–813 provides that in an unlawful detainer action "either party may, within ten days, appeal from the judgment rendered." Utah Code Ann. § 78B–6–813 (2008). In addition, rule 4(a) of the Utah Rules of Appellate Procedure provides,

> In a case in which an appeal is permitted as a matter of right from the trial court to the appellate court, the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from. However, when a judgment or order is entered in a statutory forcible entry or unlawful detainer action, the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 10 days after the date of entry of the judgment or order appealed from.

Utah R.App. P. 4(a). The jurisdictional question before this court in this case is whether the time for appeal is governed by the ten-day limit provided for a direct unlawful detainer action, *see* Utah Code Ann. § 78B–6–813; Utah R.App. P. 4(a), or whether RCC's complaint contained sufficient additional causes of action to prevent the ten-day limit from controlling the time for appeal, *see Fashions Four Corp. v. Fashion Place Assocs.,* 681 P.2d 830, 831–32 (Utah 1984).

¶ 18 In *Fashions Four Corp. v. Fashion Place Associates,* 681 P.2d 830 (Utah 1984),[2]

---

1. Utah Code section 78–36–8.5 was amended, effective February 7, 2008, and renumbered in a 2008 amendment as section 78B–6–808. *See* Utah Code Ann. § 78B–6–808 amend. notes (2008). We cite, as do the parties, to the section in effect at the time the possession bond was returned in 2005.

2. After *Fashions Four Corp. v. Fashion Place Associates,* 681 P.2d 830 (Utah 1984), was decided, Utah Code section 78–36–11 was renumbered in a 2008 amendment as section 78B–6–813. *See* Utah Code Ann. § 78B–6–813 amend. notes (2008). Additionally, rule 73(a) of the Utah Rules of Civil Procedure governing the procedure for taking an appeal was repealed by the

the Utah Supreme Court determined that unlawful detainer actions containing additional declaratory and equitable causes are not subject to the ten-day appeal limit of Utah Code section 78–36–11, and appeal from such actions may be taken, pursuant to rule 73(a) of the Utah Rules of Civil Procedure, one month from the date of the order. We therefore next determine whether the action in this case contains additional causes of actions sufficient to prevent the ten-day limit from controlling the time for appeal.

¶ 19 RCC's eviction complaint contained two causes of action: unlawful detainer and breach of personal guaranty. Hunan then filed its counterclaim alleging breach of the lease agreement.[3] RCC asserts that the appeal is untimely because its case was filed as, and always remained, an unlawful detainer action. Indeed, RCC's complaint, absent allegations of breach of personal guaranty, is a straight unlawful detainer action wherein the ten-day limit would apply. *See Brandley v. Lewis*, 97 Utah 217, 92 P.2d 338, 339–40 (Utah 1939).

¶ 20 However, RCC chose to include in its complaint a related but independent claim for enforcement of breach of personal guaranty that could have been filed on its own in a separate action. Besides being unnecessary for a determination of unlawful detainer action, RCC's breach of personal guaranty claim presents issues, facts, and evidence related to Knox's obligations and liability under the personal guaranty agreement, all of which is beyond that necessary for an unlawful detainer action. Thus, although RCC's complaint does not include additional declaratory or equitable causes, *see generally Fashions Four*, 681 P.2d at 831 (determining that the additional declaratory and equitable causes created a hybrid situation that pre-

vented the ten-day limit from controlling the time for appeal), its action is also not strictly a simple complaint for unlawful detainer as is typically governed by the ten-day limit. *See Brandley*, 92 P.2d at 339–40.

¶ 21 The hybrid nature of RCC's action containing the additional claim for enforcement of breach of personal guaranty leads us to conclude that the ten-day limit does not control the time for appeal in this case. *See Fashions Four*, 681 P.2d at 831. Since the appeal is not governed by the ten-day limit and was filed within thirty days after entry of the judgment, we conclude that the appeal was perfected in a timely manner, and we proceed to the merits of the case.

## II. Termination of Lease

¶ 22 Hunan asserts that the trial court erred when it concluded that the termination provision of the lease was triggered once Hunan paid its rent late for three consecutive months.

> When interpreting a contract, a court first looks to the contract's four corners to determine the parties' intentions, which are controlling. If the language within the four corners of the contract is unambiguous ... a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law.

*Fairbourn Commercial, Inc. v. American Housing Partners, Inc.*, 2004 UT 54, ¶ 10, 94 P.3d 292 (omission in original) (internal quotation marks omitted).[4]

¶ 23 Hunan argues that the termination provision is only triggered upon a material default, which Hunan asserts the lease defines as the failure to pay rent for ten days after written notice and the opportunity to cure. Hunan maintains that it did not re-

---

adoption of the Utah Rules of Appellate Procedure. *See* Utah R. Civ. P. Procedure 73 (repealed 1985). Rule 73(a) was superseded by rule 4(a) of the Rules of the Utah Supreme Court, *see Dixon v. Stoddard*, 765 P.2d 879, 881 (Utah 1988), which supreme court rule has since been superseded by rule 4(a) of the Utah Rules of Appellate Procedure. *See* Utah R.App. P. introductory note.

3. Hunan also filed a motion to amend its counterclaim to include claims for conversion. How-

ever, the trial court denied Hunan's motion to amend. Therefore, we do not include those additional causes of action in determining whether this is a hybrid case sufficient to prevent section 78B–6–813 from controlling the time for appeal.

4. The trial court determined that the lease is a fully integrated, unambiguous contract. The parties do not assert otherwise, and we therefore limit our review to the plain language of the contract.

ceive said notice and, as such, Hunan was not in material default anytime during the four consecutive months it made late rent payments. The trial court determined that the termination provision in paragraph 29, the default section of the lease, made a distinction between a material default and repetitious defaults under the lease and allowed RCC the right to terminate the lease based on either type of default. The trial court further determined that the termination provision did not require written notice and an opportunity to cure when termination was due to a repeated default. The trial court found that RCC was in compliance with the lease when, after three consecutive defaults, RCC did not afford Hunan an opportunity to cure any further default but instead terminated the lease by giving Hunan a three-day written notice of cancellation.

¶ 24 Paragraph 29 provides, in pertinent part,

Tenant shall be in material default and breach under this Lease if (i) Tenant shall default in the payment as and when due of any Minimum Rent, Additional Rent or any other amount required to be paid by Tenant hereunder, and such default shall continue for a period of ten (10) days after written notice thereof from Landlord....

. . . .

Notwithstanding anything herein to the contrary, *if Tenant shall default in the payment of any Rent, ... and such default shall continue to be repeated for three (3) consecutive months,* or for a total of five (5) months in any period of twelve (12) consecutive months, ... *then notwithstanding that such default shall have been cured within the period after notice as provided by this Section 29, any further or additional default, whether of a similar or dissimilar nature, shall be deemed to be deliberate and Landlord need not afford Tenant an opportunity to cure any such further or additional default as provided by this Section 29, but shall have the right,* at Landlord's option in addition to, and not in limitation of, any other right or remedy available to Landlord at law, in equity, or hereunder, *to terminate this Lease giving Tenant a three (3) day writ-ten notice of cancellation.* Upon the expiration of said three (3) days, this Lease shall terminate without in any way releasing Tenant from Tenant's liability hereunder with regard to a termination of this Lease in the event of a default by Tenant under this Lease.

(Emphases added.)

¶ 25 We agree with the trial court's interpretation of the lease default section that RCC is permitted to terminate the lease based on either a material default or a repeated default. The default section clearly provides that if Hunan defaulted in the payment of rent for three consecutive months, regardless of whether any default was material or previously cured, a further or additional default would permit RCC to terminate the lease by giving Hunan a three-day written notice of cancellation. Because the default section allows termination based on repeated defaults that have previously been cured, we do not agree with Hunan that the lease requires that each late payment must be a material default that requires written notice and an opportunity to cure before RCC is allowed to terminate the lease for Hunan's repeated late rent payments. We are further persuaded that the interpretation Hunan urges is incorrect because it would render the repeated default section meaningless. *See* Restatement (Second) of Contracts § 203 cmt. a (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.").

¶ 26 To conclude that the termination provision based on repeated defaults is only triggered if each default is considered material would be nonsensical, allowing termination after three defaults only if they each rise to the level of a material default when only one material default is otherwise sufficient to trigger the termination. The trial court found that RCC bargained for the right to put an end to repetitious late payments regardless of whether said defaults were so significant as to rise to the level of a material default. Based on this analysis, we conclude that the trial court did not err in its determination that the lease permitted RCC to ter-

minate the lease upon three non-material defaults.[5]

### III. Unlawful Detainer Statute and Treble Damages

■ ¶ 27 Hunan argues that the trial court erred in concluding that Hunan was in unlawful detainer of the premises. Hunan asserts that a tenant is only in unlawful detainer if the tenant fails to pay rent or meet another condition of the lease and remains in default, *see* Utah Code Ann. § 78–36–3(1)(c), (e) (Supp.2007) (current version as amended at Utah Code Ann. § 78B–6–802(1)(c), (h) (2008)), after receiving "a notice in writing requiring in the alternative the payment of the rents and other amounts due ... or the surrender of the detained premises," *id.* § 78–36–3(1)(c).

¶ 28 Although RCC did not provide the notice required under the unlawful detainer provision upon which Hunan relies, the trial court did not base its unlawful detainer conclusion on that provision. Instead, the trial court found that Hunan refused to vacate the premises after receiving RCC's written notice that RCC was terminating the lease based on Hunan's consecutive defaults, at which point Hunan became a tenant at-will. The trial court further found that because Hunan was an at will tenant, Hunan had been given the proper statutory notice for the termination of a tenancy at will, allowing Hunan five days to vacate. *See id.* § 78–36–3(1)(b)(ii) ("A tenant of real property, ... is guilty of an unlawful detainer: ... in cases of tenancies at will, where he remains in possession of the premises after the expiration of a notice of not less than five calendar days.").

¶ 29 Hunan asserts that its late payments did not constitute a breach of the lease and,

as such, the trial court erred in concluding that Hunan was a tenant at will and in violation of section 78–36–3(1)(b)(ii) of the unlawful detainer statute. Hunan does not provide any supporting analysis for its argument, and its argument is without merit. Under the provisions of the lease, as previously discussed in section II, *see supra* ¶¶ 22–26, RCC had the right to terminate the lease based on Hunan's repeated defaults. Therefore, the trial court correctly concluded that RCC properly terminated the lease. The trial court further concluded that said termination made Hunan a tenant at will,[6] and that "RCC gave the proper statutory notice for the termination of a tenancy at will, allowing Hunan five (5) days to vacate." *Cf. Shoemaker v. Pioneer Invs.*, 14 Utah 2d 250, 381 P.2d 735, 736 (1963) (holding that a tenant became a tenant at will when the lease was terminated by the tenant's failure to pay rent and taxes, and that the landlord properly proceeded to regain possession of the premises by the procedure set forth in the unlawful detainer statute). We see no error in the trial court's analysis, and affirm its determination that Hunan was in unlawful detainer of the premises.

■ ¶ 30 Hunan also asserts that the trial court erred in awarding treble damages. Because we determine that the trial court did not err in concluding that Hunan was in unlawful detainer, and Hunan alleges no error related to the amount of treble damages, we affirm the trial court's award of treble damages.

### IV. Motion to Amend Counterclaim

■ ¶ 31 Hunan contends that the trial court erred in denying Hunan's motion to amend its counterclaim based on Hunan's failure to file its request to submit—filed

---

**5.** Alternatively, Hunan argues that even if the termination provision does not require a material default, Hunan was not in default for late rent payments because Hunan had a rent credit of $54,405.36 for payment of work RCC failed to complete. The trial court determined that Hunan was not entitled to any offset because Hunan had waived all its breach of lease claims related to RCC's work. We do not, however, address Hunan's argument because we conclude in section V of this opinion that Hunan did indeed

waive its breach of lease claim, *see infra* ¶¶ 37–38.

**6.** The trial court's finding number 11 states,

When Hunan refused to vacate the Premises after receiving RCC's written notice, it became a tenant at will. RCC did have the option, under the terms of the Lease, to allow Hunan to continue as a month-to-month tenant; however, RCC was permitted to, and did, treat Hunan as a tenant at will....

nearly six months after the motion to amend—in a timely manner. Hunan argues that there is no requirement that a request to submit be filed by a certain time. In support of this argument, Hunan cites rule 7(d) of the Utah Rules of Civil Procedure and argues that the rule only requires that a party file a request to submit after briefing is complete. *See* Utah R. Civ. P. 7(d). The trial court did indeed consider the timing of the request to submit, as well as several other factors that Utah appellate courts have focused on in reviewing the grant or denial of a motion to amend, *see Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, ¶ 26, 87 P.3d 734 (listing the three factors as follows: "the timeliness of the motion; the justification given by the movant for the delay; and the resulting prejudice to the responding party").

¶ 32 "The granting or denial of leave to amend a pleading is within the broad discretion of the trial court, and we will not disturb absent an abuse of that discretion." *Id.* ¶ 41 (internal quotation marks omitted). In *Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, 87 P.3d 734, this court further clarified the trial court's discretion in such instances—stating that the trial court has discretion to make case—specific determinations as to whether too much time has passed to fairly allow an amendment—as it considers various factors including the weight that it gives to one factor or another. *See id.* ¶¶ 41–42. Here, the trial court based its denial on its conclusion that Hunan had failed to set forth with any particularity the grounds for its motion to amend, did not file a separate memorandum outlining any case law to support the grant of the motion, and did not provide any reason or excuse as to why it had waited so long to file a request to submit, all of which might cause prejudice to RCC in light of the approaching trial date. Hunan does not allege nor demonstrate that the trial court abused its broad discretion concerning the factors it considered or the weight it gave to any particular factor. As a result, we see no error in the trial court's ruling and affirm the trial court's denial of Hunan's motion to amend.

## V. Waiver of Breach of Lease Claim

¶ 33 Hunan argues that the trial court erred when it concluded that Hunan waived its breach of lease claim against RCC. "[A] waiver is the intentional relinquishment of a known right." *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 16, 196 P.3d 588. The elements of waiver consist of: "(1) an existing right, (2) knowledge of its existence, and (3) an intent to relinquish the right." *Id.* Hunan does not argue the first two elements of waiver. Instead, Hunan contends that the trial court erred in concluding that Hunan's conduct demonstrated in some unequivocal manner an intent to waive its breach of lease claim.

¶ 34 The trial court concluded that Hunan waived its breach of lease claim by its failure to exercise specific rights within the time frames provided in the lease regarding the acceptance or rejection of landlord's required contractual work. The trial court found that Hunan failed to exercise its rights when it neglected to submit plans and specifications to RCC as required by the lease and when it failed to raise any objections or give notice of any concerns about the condition of the premises or RCC's work within thirty days after receiving the notice of tender. The trial court also concluded that Hunan, through its actions, accepted the premises as being in the condition called for in the lease when it took possession of the premises, began to do its own work, and specifically accepted the premises "as is" when it entered into the written lease modification.

¶ 35 Hunan raises two arguments regarding the trial court's waiver ruling. First, Hunan asserts that it provided evidence that Hunan submitted its plans to RCC's architect within thirty days of executing the lease. This argument, however, ignores the trial court's finding that

> RCC did not authorize any architect or contractor to receive, accept, or approve, on its behalf, any . . . plans, specifications, or other items called for under the Lease. Rather, all . . . plans and specifications due from Hunan to RCC were to be delivered to RCC directly and not to any other third party.

Hunan does not challenge this finding. As a result, we conclude that the trial court did not err in its determination that Hunan did not provide required plans to RCC within the thirty days required by the lease. Nor did the trial court err when it concluded that Hunan, as a result of its failure to submit plans to RCC, waived any claim that RCC failed to provide the work required in the lease.

¶ 36 Second, Hunan disagrees with the trial court's finding that Hunan accepted the premises "as is" when it entered into the lease modification. Hunan argues that the plain language of the lease modification expressly provides that Hunan only agreed to waive claims for "further Landlord's Work" and the lease modification does not evidence Hunan's intent to waive all of its breach of lease claims against RCC. The lease modification provided, in pertinent part, "[Hunan] agrees that, other than the items in paragraph 2 above, *all of the Landlord's Work is completed, and [Hunan] accepts the Premises as is and waives any and all claims for further Landlord's Work under the Lease.*" (Emphasis added.)

¶ 37 The trial court found Hunan's lease modification argument unconvincing, stating,

Hunan's claim that RCC still needed to pay for work . . . completed because the Lease Modification states that Hunan waives claims for "further" Landlord's Work is not persuasive. First, it is inconsistent with the statement that Hunan accepts the Premises as-is. Second, the Lease describes as Landlord's Work both the payment and the performance of the items set forth in Exhibit "C" to the Lease. No further Landlord's Work, therefore, means no further payment or performance for the items in Exhibit "C." Therefore, Hunan waived any claim for further payment from RCC other than what was set forth in the Lease Modification.

We agree with the trial court's interpretation of the lease modification's "as is" provision. The lease modification clearly states that Hunan agrees that all of RCC's work, except for items specifically stated therein and not at issue here, is complete and that Hunan accepts the premises as is. To interpret the phrase "waives any and all further Landlord's Work" as an exclusive and limited waiver, and one that does not include any other claims relating to the condition of the premises at the time the parties entered into the lease modification, would render the phrase "[Hunan] agrees that, . . . all of the Landlord's Work is completed, and [Hunan] accepts the Premises as is" meaningless. *See* Restatement (Second) of Contracts § 203 cmt. a (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.").

¶ 38 In sum, we agree with the trial court that Hunan waived its breach of lease claim by its failure to submit plans to RCC's architect within thirty days of executing the lease as required by the lease and by its failure to give notice of any concerns about the premises within thirty days after receiving the notice of tender. We also agree with the trial court's interpretation of the lease modification containing an "as is" provision that Hunan signed, thereby documenting its waiver of the breach of lease claim.

¶ 39 In a related argument, Hunan asserts that the trial court erred when it allowed RCC to invoke the equitable defense of waiver. Hunan argues that RCC had unclean hands since RCC failed to perform the landlord's work along with its affirmative misrepresentation that the premises would be ready for Hunan's occupancy and, therefore, RCC forfeited its right to invoke the waiver defense. This argument ignores the trial court's findings that "RCC has fully performed its obligations under the Lease, as modified." As a result, we see no error with the trial court's application of the equitable defense of waiver.

## VI. Possession Bond

¶ 40 Hunan argues that the trial court erred by releasing RCC's $5000 possession bond before adjudicating RCC's eviction action and Hunan's counterclaim. Hunan asserts that the trial court's action undermined the purpose of the possession bond and deprived Hunan of its security in the event the trial court had found that Hunan was not in

unlawful detainer. However, Hunan has identified no harm from the trial court's action, nor has Hunan demonstrated how it affected the outcome of the proceedings. As a result, to the extent that the trial court's release of the possession bond was error, we deem that error harmless. *See H.U.F. v. W.P.W.*, 2009 UT 10, ¶ 44, 203 P.3d 943 (" '[H]armless error is an error that is sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the proceedings.' " (alteration in original) (quoting *State v. Spillers*, 2007 UT 13, ¶ 24, 152 P.3d 315)).

## VII. Attorney Fees

¶ 41 In its cross-appeal, RCC argues that the trial court erroneously denied RCC's request for attorney fees. RCC asserts that the trial court's refusal to award RCC its attorney fees is contrary to the lease provision and Utah Code section 78B–6–811(3), both of which allow recovery of attorney fees. *See* Utah Code Ann. § 78B–6–811(3) (2008) (formerly codified at Utah Code Ann. § 78–36–10(3) (Supp.2007)).

¶ 42 Utah Code section 78B–6–811(3) of the forcible entry and detainer statute states, "[t]he judgment *shall* be entered against the defendant for the rent, for three times the amount of the damages assessed under [s]ubsections (2)(a) through (2)(e), *and for reasonable attorney fees.*" *Id.* (emphases added). The statute's mandatory language prohibits the trial court from declining to award treble damages and *reasonable attorney* fees in an unlawful detainer case. *See id.; cf. Aris Vision Inst., Inc. v. Wasatch Prop. Mgmt., Inc.*, 2006 UT 45, ¶ 11, 143 P.3d 278 ("The plain language of the statute contains no apparent ambiguities. It clearly states that damages for forcible entry, forcible or unlawful detainer, and waste shall be trebled."); *Forrester v. Cook*, 77 Utah 137, 292 P. 206, 214 (1930) (stating that the language in section 78–36–10(3) "makes it mandatory upon

the court to render judgment for three times the amount of damages").

¶ 43 However, our review of the record discloses that RCC did not preserve the statutory mandate for attorney fees argument since it failed to raise this argument below and does not argue plain error or exceptional circumstances on appeal. Nonetheless, we reach the same result based on RCC's contractual entitlement to attorney fees. The trial court, in denying RCC's request for attorney fees, stated,

> [RCC] has been awarded a substantial judgment, including treble damages, and a further award is not merited under the facts of this case. Moreover, while the Court ultimately found [Hunan was] legally barred from recovering on their tenant improvements, [Hunan] raised a number of real and substantial issues that the Court considered carefully in its ruling. As the [Utah] Court of Appeals has noted, "courts have, in extraordinary situations, declined to award attorney fees to a prevailing party in spite of an enforceable contractual provision." *A.K. & R. Whipple Plumbing & Heating v. Guy*, 2002 UT App 73, ¶ 12[, 47 P.3d 92] (citation omitted).[7] Accordingly, this Court declines to award attorney[ ] fees at this time.

(Emphasis added). Although a court may refuse to grant contractual attorney fees in extraordinary circumstances, the statutorily mandated treble damages award in this case does not amount to such a situation. *See Cobabe v. Crawford*, 780 P.2d 834, 836 n. 3 (Utah Ct.App.1989) (citing examples of circumstances justifying the denial of attorney fees, such as forfeiture, multiple rejected settlement offers, and acting improperly). The unlawful detainer statute establishes a standard requirement that the court measure damages for three times the amount of the damages assessed for unlawful detainer claims. *See* Utah Code Ann. § 76B–6–811. A mandated award of treble damages is a statutorily required procedure that a court

---

7. It should be noted that a writ of certiorari was granted. The case was affirmed by *A.K. & R. Whipple Plumbing & Heating v. Guy*, 2004 UT 47, 94 P.3d 270, which we note interpreted on appeal the term "shall" in a statutory attorney fee provision as "mandat[ing] that the successful party be allowed to recover reasonable attorney fees," and concluding that therefore "courts do not have discretion to decide whether to award reasonable attorney fees to the 'successful party.' " *See id.* ¶ 7.

must routinely award in its assessment of unlawful detainer damages. A routine award of damages is not an extraordinary circumstance.

¶ 44 Because we conclude that the award of statutorily mandated treble damages in this case does not constitute an extraordinary circumstance sufficient to justify the denial of attorney fees, the trial court may not disregard the attorney fees bargained for by the parties in the lease. Accordingly, we reverse the trial court's decision not to award attorney fees and remand for a determination of attorney fees.

## CONCLUSION

¶ 45 The hybrid nature of RCC's action containing an additional cause of action for breach of personal guaranty prevents the ten-day limit of Utah Code section 78B-6-813 from controlling the time for appeal. Since the appeal is not governed by the ten-day limit and was filed within thirty days from entry of the judgment, we conclude that this court has jurisdiction to review the merits of the case.

¶ 46 The default section of the lease clearly provides that if Hunan defaulted in the payment of rent for three consecutive months, regardless of whether any default was material or previously cured, then RCC would be allowed to terminate the lease upon the occurrence of a further default. Thus, the trial court did not err in its determination that the default section of the lease permitted RCC to terminate the lease based on repeated non-material defaults. After receiving RCC's written notice that it was terminating the lease, Hunan refused to vacate the premises thus becoming a tenant at will. Thereafter, RCC served Hunan with a notice that Hunan had five days to vacate. Hunan remained on the premises, and the trial court properly concluded that Hunan was in unlawful detainer and awarded treble damages. Hunan alleges no error related to the amount of treble damages; thus, we affirm the trial court's treble damages award.

¶ 47 The trial court denied Hunan's motion to amend its counterclaim based on Hunan's (1) failure to set forth with any particularity the grounds for their motion to amend, (2) not filing a memorandum in support, and (3) not providing any reason for waiting nearly six months after the motion to amend to file a request to submit. Hunan does not assert nor demonstrate that the trial court abused its discretion in the factors it considered or the weight it gave to any particular factor. Therefore, we see no error in the trial court's denial of Hunan's motion to amend.

¶ 48 Hunan waived its breach of lease claim when it failed to submit plans and specifications to RCC, failed to raise any objections or give notice of any concerns about the condition of the premises within thirty days after receiving the notice of tender, and signed a lease modification provision accepting the premises as is. As a result, we affirm the trial court's waiver ruling.

¶ 49 The statutorily mandated treble damages in this case do not amount to extraordinary circumstances sufficient to allow a court to refuse to grant attorney fees pursuant to an enforceable contractual provision. As such, we conclude that the trial court erred in refusing to award RCC attorney fees. Accordingly, we reverse the trial court's decision not to award attorney fees and remand for a determination of reasonable attorney fees.

¶ 50 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, CAROLYN B. McHUGH, Judge.