**2017 UT App 230**

# THE UTAH COURT OF APPEALS

REGGIE LEWIS,
Appellee,
*v.*
RODNEY NELSON,
Appellant.

Opinion
No. 20160807-CA
Filed December 14, 2017

Fifth District Court, St. George Department
The Honorable Eric A. Ludlow[1]
No. 120500402

Charles A. Schultz, Attorney for Appellant

Penrod W. Keith and Elijah L. Milne, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and RYAN M. HARRIS concurred.

TOOMEY, Judge:

¶1     This case comes before us on an interlocutory appeal from the district court's denial of Rodney Nelson's motion to amend his answer to assert a compulsory counterclaim. Nelson contends the district court abused its discretion in denying his motion to amend because, in his view, the court "had the obligation" to grant his motion. We disagree and therefore affirm.

---

1. During the proceedings below, three different judges were assigned to the case. We refer to them as First Judge, Second Judge, and Third Judge.

¶2 This case arises from a contract dispute between Nelson and Reggie Lewis, who sold Nelson the right to operate a distribution supply route. In July 2012, Lewis filed a breach of contract action against Nelson, complaining that Nelson missed payments under the contract. Nelson, acting pro se, answered the complaint and raised numerous affirmative defenses, including breach of the covenant of good faith and fair dealing; breach of contract; and fraud, deceit, or misrepresentation. The answer did not include any counterclaims.

¶3 More than three months after filing his answer, and without first seeking leave to amend it, Nelson filed counterclaims for fraud and violation of Utah's Business Opportunity Disclosure Act. Because Nelson did not first seek leave to amend his answer, Lewis filed a motion to dismiss the counterclaims. Nelson did not file an opposing memorandum but instead filed a belated motion to amend his answer, explaining that, "as a pro se litigant, it has taken him additional time to become familiar with his legal defenses, and [he] is only now aware of his legal defenses and counterclaims." Lewis opposed the motion, arguing that it was untimely, that there was no justification for Nelson's failure to include the counterclaims in his answer, that the counterclaims would cause undue delay, and that the counterclaims were not well pleaded.[2] In his reply memorandum, Nelson explained, "I thought that my answer would serve as a counterclaim . . . . [T]here will not be any new information or discovery needed with my counterclaim. The same facts and documents that will be central to my defense to

---

2. Lewis argued that the fraud claim was not pleaded with the particularity required by rule 9(c) of the Utah Rules of Civil Procedure and that there was no private right of action specified under the Business Opportunity Disclosure Act. Lewis further argued that, even if the act provided a private right of action, the act did not apply to the sale of the distribution supply route.

[Lewis's] complaint will be used as evidence in my counterclaim."

¶4　During oral argument on the two motions in September 2013, Nelson conceded that "the answer and the counterclaim are essentially the same thing." First Judge then announced he was granting Lewis's motion to dismiss the counterclaims and denying Nelson's motion to amend and remarked, "[B]ut it really doesn't impact Mr. Nelson's defense at all." First Judge directed Lewis's counsel to prepare the order. The order simply stated that, "[b]ased upon the pleadings, motions, memoranda, exhibits, and oral arguments of the parties," Nelson's motion to amend "should be denied for the reasons set forth in" Lewis's opposing memorandum, and that Nelson's counterclaims "should be dismissed with prejudice for the reasons set forth in" Lewis's motion to dismiss.

¶5　In January 2014, after discovery was completed, Lewis moved for summary judgment, which First Judge orally granted during a March hearing and which was signed by Second Judge.[3] Nelson eventually appealed from the order of summary judgment,[4] and post-judgment execution efforts were stayed. We reversed and remanded. *See Lewis v. Nelson*, 2015 UT App 262, ¶ 17, 366 P.3d 848. In a footnote of that opinion, we stated:

> Nelson also challenges the trial court's dismissal with prejudice of his request for leave to file a counterclaim. This issue is not adequately briefed, and we accordingly do not consider it on appeal.

---

3. The basis for Lewis's motion is not relevant here. Accordingly, we do not further discuss it.

4. Nelson hired counsel prior to this appeal and has been represented since then.

> This decision on our part is without prejudice to the prerogative of the trial court to reconsider the dismissal in view of our reversal of the summary judgment and our remand for further proceedings.

*Id.* ¶ 8 n.2 (citation omitted).

¶6 An order of remittitur issued in April 2016. On remand, the case was reassigned to Third Judge.

¶7 In May 2016, Lewis filed a certificate of readiness for trial. Two weeks later, Nelson filed a second motion to amend his answer to assert several compulsory counterclaims, but he did not attach his proposed counterclaim. Instead, in his supporting memorandum, Nelson argued he had "a legal right to file a counterclaim against Lewis for fraud, fraudulent inducement, breach of covenant of good faith and fair dealing, breach of contract, and other causes of action." Nelson also argued that First Judge abused his discretion in denying the first motion to amend and requested that Third Judge so conclude. Lewis filed an opposing memorandum, arguing the motion should be denied because

> (1) Nelson has not submitted a proposed amended pleading with this motion; (2) his counterclaim was previously dismissed with prejudice; (3) he has not offered any excuse—let alone any justification—for his failure to assert a claim at the commencement of this case; (4) this lawsuit began nearly four years ago and the parties appeared in court for trial over two years ago; and (5) Lewis would suffer unavoidable prejudice if Nelson were allowed to amend his pleadings at this late stage.

Nelson attached his proposed counterclaim to his reply memorandum. In it, he asserted claims for breach of the

covenant of good faith and fair dealing, breach of contract, fraud, fraudulent inducement, and unjust enrichment.[5]

¶8      At a hearing on the motion, Lewis's counsel explained that Third Judge should not reach the question of whether First Judge erred in denying Nelson's first motion to amend, because it was dismissed with prejudice and Nelson had not moved to amend or alter that order.[6] Lewis's counsel then turned to the merits of the second motion to amend and explained that, when a party moves to amend its pleading, courts often consider the timeliness of the motion, the justification for not including the amended material in the initial pleading, and the prejudice to the non-moving party. Lewis's counsel argued that these factors weighed in favor of denying Nelson's second motion to amend. In response to these arguments, Third Judge asked, "Why was a counterclaim not brought up in the first instance? Why . . . wasn't one filed immediately—like four years ago?" Nelson's counsel responded, "I cannot answer that question. I was not representing Mr. Nelson [at that time]." Following this response, Lewis's counsel stated, "I can just wind up there. I think that if there is no showing of excusable neglect or some showing of new evidence, there's no showing of any real justification at all." Third Judge then announced he was denying the motion, at least in part, because Nelson did not provide "any justification for his failure to file the counterclaim in the first instance." The court issued a written order denying the motion

---

5. We emphasize that, in his second motion to amend, Nelson attempted to assert a different counterclaim than he did in his first motion to amend.

6. Although Lewis did not point out that the majority of the counterclaims Nelson wished to assert in his second motion to amend did not appear in his first motion to amend, it was apparent from the record.

"[b]ased upon each of the grounds contained" in Lewis's opposing memorandum. Nelson filed a petition for permission to appeal from the interlocutory order denying his second motion to amend his answer, which we granted.

¶9     Nelson contends the district court erred when it denied his motions to amend his answer to assert compulsory counterclaims. He first argues that, because he filed his motions before trial and because he represented himself for much of the proceedings, the district court abused its discretion in denying them. Second, he argues the court was obligated to grant his motions because he was attempting to file compulsory counterclaims before trial.[7] We review a district court's decision to deny a party's motion to amend its pleadings for an abuse of discretion. *Fishbaugh v. Utah Power & Light*, 969 P.2d 403, 405 (Utah 1998).

¶10     As a preliminary matter, we address the scope of this appeal. Although Nelson appeals from Third Judge's interlocutory order on his second motion to amend, his brief largely focuses on alleged errors committed by First Judge in denying his first motion to amend. Nelson's first motion to amend was denied more than four years ago, and he never moved to alter or amend that order. He challenged First Judge's ruling in his first appeal, and we disposed of this argument because it was inadequately briefed. *Lewis*, 2015 UT App 262, ¶ 8 n.2. Thus, the law of the case doctrine precludes us from addressing this argument anew. *See IHC Health Services, Inc. v.*

---

7. Nelson also asserts, without any reasoned analysis, that the Open Courts Clause of the Utah Constitution and rules 1 and 15 of the Utah Rules of Civil Procedure required the district court to grant his motions to amend. But he has not adequately briefed these arguments, and we therefore do not address them. *See Bank of America v. Adamson*, 2017 UT 2, ¶ 11, 391 P.3d 196.

*D & K Mgmt., Inc.*, 2008 UT 73, ¶¶ 27–28, 196 P.3d 588 (explaining that the mandate rule, a branch of the law of the case doctrine, "dictates that a prior decision of a district court becomes mandatory after an appeal and remand"). *But see Blackmore v. L & D Dev. Inc.*, 2016 UT App 198, ¶ 30, 382 P.3d 655 (stating that, "on remand from an appeal, the district court retains discretion to decide whether to reconsider any issue which was not expressly or impliedly disposed of on appeal" (citation and internal quotation marks omitted)). In addition, the first proposed counterclaim differed from the second proposed counterclaim, in that Nelson asserted new claims, thus necessitating a different analysis. For these reasons, we do not address any arguments related to the first motion to amend.[8] *See* Utah R. App. P. 5(a).

¶11    Compulsory counterclaims are governed by rule 13 of the Utah Rules of Civil Procedure, which provides in relevant part:

> A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:

---

8. Nelson contends that footnote 2 in our prior decision, *see Lewis v. Nelson*, 2015 UT App 262, 366 P.3d 848, requires us to review the ruling on his first motion to amend. Nelson is mistaken. Footnote 2 merely granted the district court discretion to revisit the first ruling, which it elected not to do on its own. *See id.* ¶ 8 n.2. It did not grant him the right to challenge First Judge's ruling for a second time on appeal, thus thwarting the law of the case doctrine. *See IHC Health Services, Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶¶ 27–28, 196 P.3d 588. And in any event, footnote 2 applied only to Nelson's first proposed counterclaim, not the second proposed counterclaim, which is the subject of this appeal.

> (A) arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim; and
>
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.[9]

Utah R. Civ. P. 13(a)(1). Thus, unless an exception applies, a party wishing to assert a compulsory counterclaim must assert it in its pleading.

¶12    Rule 15 addresses a party's ability to amend its pleading and provides in relevant part:

> (1) A party may amend its pleading once as a matter of course within:
>
>> (A) 21 days after serving it; or
>>
>> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) In all other cases, a party may amend its pleading only with the court's permission or the opposing party's written consent. The party must attach its proposed amended pleading to the motion to permit an amended pleading. The court

---

9. This rule was amended in 2016. Because the amendment was stylistic and does not alter our analysis, we cite the current version of the rule for convenience.

should freely give permission when justice requires.[10]

*Id.* R. 15(a)(1)–(2). In determining whether "justice requires" granting a motion to amend a pleading, Utah courts "have focused on three factors: the timeliness of the motion; the justification given by the movant for the delay; and the resulting prejudice to the responding party." *Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, ¶ 26, 87 P.3d 734 (citation and internal quotation marks omitted).

¶13   "[M]otions to amend are typically deemed untimely when they are filed in the advanced procedural stages of the litigation process, such as after the completion of discovery." *Id.* ¶ 29. And "regardless of the procedural posture of the case, motions to amend have typically been deemed untimely when they were filed several years into the litigation." *Id.* ¶ 30. "In considering the justification prong of the analysis, Utah courts have typically focused on whether the moving party had knowledge of the events that are sought to be added in the amended [pleading] before the original [pleading] was filed." *Id.* ¶ 32. But courts should also "focus[] on the reasons offered by the moving party for not including the facts or allegations in the original [pleading]." *Id.* ¶ 38. "[I]n cases where the party knew of the events or claims earlier yet failed to plead them due to a dilatory motive, a bad faith effort during the pleading process, or unreasonable neglect in terms of pleading preparation, it would follow that the motion to amend could be denied on that basis." *Id.* Although these factors are the ones courts most often consider when deciding whether to grant a motion to amend a pleading, they are not an exhaustive list of factors a court may

---

10. Stylistic changes were also made to rule 15 in 2016, and we therefore cite the current version of the rule.

consider. *See id.* ¶ 39. Indeed, other factors include delay, bad faith, or futility of the amendment. *Id.* ¶ 40.

¶14 In *Kelly*, we stressed that rule 15(a) is not governed by an "exclusive three-part analysis" but is instead governed by "a multi-factored, flexible inquiry that allows courts the leeway to evaluate the factual circumstances and legal developments involved in each particular case." *Id.* ¶ 41. And although it is best practice to consider the timeliness, justification, and prejudice of the motion to amend, "the circumstances of a particular case may be such that a court's ruling on a motion to amend can be predicated on only one or two of the particular factors." *Id.* ¶ 42. We concluded our clarification of the motion to amend analysis in *Kelly* by emphasizing that,

> though we have stressed . . . that a court is under no obligation to consider any or all of the specific factors that we have discussed above, we nevertheless reiterate the well-accepted rule that it is a per se abuse of discretion for a trial court to fail to explain its decision regarding a motion to amend with reference to the appropriate principles of law or the factual circumstances that necessitate a particular result.

*Id.* (citing *Aurora Credit Services, Inc. v. Liberty West Dev., Inc.*, 970 P.2d 1273, 1281–82 (Utah 1998)). One exception to this per se rule is where "the reason for denial is apparent." *Aurora Credit Services*, 970 P.2d at 1282. With these rules in mind, we address Nelson's arguments.[11]

---

11. Nelson does not argue that the district court's written order failed to adequately explain his reasoning for denying the motion. We nevertheless recognize that the written order, although technically sufficient, does not follow best practices. It

(continued…)

¶15 As we understand it, Nelson first contends that Third Judge abused his discretion when he denied Nelson's second motion to amend because Nelson filed it before trial had actually taken place and because he had represented himself for much of the proceedings. Although Nelson does not mention the three factors from *Kelly*, he seems to argue that, because he filed the motion before trial—albeit more than four years after filing his answer—it was not so untimely that denying the motion was justified. And it appears he argues that his status as a pro se litigant, in the proceedings below, is adequate justification for not including his counterclaim in his answer.

¶16 Nelson's second motion to amend was filed well after the close of discovery, after several trial dates had been set, and several years after he filed his answer. *See Kelly*, 2004 UT App 44, ¶¶ 29–30. We recognize that the stay in this case and the prior appeal contributed to the delay, but these delays occurred after the case was already in the advanced stages of litigation. We also emphasize the procedural history in the present case. On the day First Judge held oral argument on Lewis's motion for summary judgment, a bench trial on all the issues presented in the case was scheduled to immediately follow. Had First Judge denied Lewis's motion for summary judgment, the case would have proceeded to trial that day, and Nelson would not have had the opportunity to file his second motion to amend. We therefore cannot conclude it was an abuse of discretion for Third Judge to

---

(…continued)

would have been best had the court articulated its reasoning and analysis in the order itself. Nevertheless, because the order explained that the court was denying Nelson's second motion to amend "[b]ased upon each of the grounds contained" in Lewis's opposing memorandum, its reasons for denying the motion are apparent from the record. *See Aurora Credit Services, Inc. v. Liberty West Dev., Inc.*, 970 P.2d 1273, 1282 (Utah 1998).

independently base his decision to deny Nelson's second motion to amend on the ground that it was untimely.

¶17 Third Judge also independently based his decision to deny Nelson's second motion to amend on the ground that Nelson did not provide adequate justification for his delay in asserting the counterclaims. Indeed, the only justification that Nelson provided for not asserting his counterclaims in his original answer is that he was unrepresented for much of the proceedings below and did not comprehend all of the applicable rules. But Third Judge determined this was inadequate justification and did not afford Nelson leniency.[12] We emphasize that, although a pro se litigant is "entitled to every consideration that may reasonably be indulged," "[r]easonable considerations do not include the need to interrupt proceedings to translate legal terms, explain legal rules, or otherwise attempt to redress the ongoing consequences of the party's decision to function in a capacity for which he is not trained." *Allen v. Friel*, 2008 UT 56, ¶ 11, 194 P.3d 903 (citation and internal quotation marks omitted). Thus, Nelson cannot rely on his pro se status as adequate justification for his "unreasonable neglect" in failing to assert his counterclaims in a timely manner. *See Kelly*, 2004 UT App 44, ¶ 38. We conclude Third Judge did not abuse his

---

12. Although Nelson was not represented for much of the proceedings, he filed numerous motions and objections with the court, citing and analyzing many of the Utah Rules of Civil Procedure. And during oral argument on Lewis's motion for summary judgment, First Judge even praised Nelson's skill, saying, "I am going to compliment you again. These are well drafted pleadings. Your responses are very straightforward and outline your position very clearly . . . . [Y]ou've put it before me masterfully."

discretion in independently basing his decision to deny Nelson's second motion to amend on the ground that it was not justified.[13]

¶18 Nelson next contends that, under *East River Bottom Water Co. v. Dunford*, 167 P.2d 693 (Utah 1946), a district court's broad discretion to grant or deny a motion to amend a pleading "does not apply to a compulsory counterclaim." We disagree.

¶19 In *Dunford*, a defendant filed a compulsory counterclaim with its answer, alleging that water shares issued in duplicate that it had purchased from a water company were valid and that it had been damaged by not receiving the benefit of those shares. *Id.* at 694. The case proceeded to a bench trial on the issues raised in the pleadings, including the defendant's counterclaim. *Id.* at 695. The court ruled in favor of the defendant on its counterclaim, but our supreme court reversed on appeal, holding that the duplicate shares were void. *Id.* at 695–96. After the case was remanded, the defendant sought leave to amend its answer to demonstrate that, despite the holding that the shares were void, it was still entitled to damages. *Id.* at 696. The district

---

13. We note that, except for the unjust enrichment claim, the claims Nelson sought to assert in his second motion to amend—breach of the covenant of good faith and fair dealing, breach of contract, and fraud—merely changed Nelson's affirmative defenses to affirmative claims, and therefore the district court could have exercised its discretion to deny the motion to amend on this basis alone. *See City of Grantsville v. Redevelopment Agency of Tooele City*, 2010 UT 38, ¶¶ 50–51, 233 P.3d 461 (stating that "[a] district court does not abuse its discretion by denying a motion to amend if the amendment does not [affect] any substantial change in the issues as they were originally formulated in the pleadings," such as where the amendment would "merely change[] [a defendant's] affirmative defense to an affirmative claim").

court granted the defendant's motion to amend, and the plaintiff appealed that decision to our supreme court. *Id.* The supreme court stated that, although the defendant had alleged in its counterclaim that the shares were valid, "the allegations and prayer also sufficiently show that the defendant was entitled to damages in case the stock should be declared invalid. It would therefore have been error for the trial court to have refused to permit the filing of the amended counterclaim if timely tendered prior to trial [on remand]." *Id.*

¶20 We conclude *Dunford* does not stand for the broad principle that it is an abuse of discretion to deny a party's motion to amend its pleading to assert a compulsory counterclaim. The holding is narrow and fact-specific. Indeed, the court held that, "[u]nder the facts and circumstances" of that particular case, it would have been an abuse of discretion to deny the motion to amend. *See id.* at 697. Although the fact that the motion to amend involved a compulsory counterclaim appeared to factor into the court's analysis, nothing in *Dunford* can be construed to mean that it is always an abuse of discretion to deny a motion to amend a pleading to assert a compulsory counterclaim.

¶21 We conclude the district court did not abuse its discretion in denying Nelson's second motion to amend his answer. Accordingly, we affirm.

―――――――